**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KRISTEN M. WALKER,**

        **Plaintiff,**                    **CIVIL ACTION NO. 16-cv-13902**

        **v.**                             **DISTRICT JUDGE NANCY G. EDMUNDS**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Kristen M. Walker seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 17). Plaintiff also submitted a reply brief in support of her Motion for Summary Judgment. (Docket no. 18.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **GRANTED IN PART** and Defendant's Motion for Summary Judgment (docket no. 17) be **DENIED**. It is further recommended that this matter be remanded

for proper consideration of Plaintiff's degenerative disc disease and for proper consideration of Dr. Hart's opinion in accordance with the treating physician rule.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income on April 8, 2013, alleging that she has been disabled since April 1, 2012, due to conversion disorder, post-traumatic stress disorder (PTSD), depression, anxiety, and bipolar disorder. (TR 201-06, 233, 237.) The Social Security Administration denied Plaintiff's claims on August 8, 2013, and Plaintiff requested a *de novo* hearing. (TR 60-73, 78.) On August 20, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) B. Lloyd Blair. (TR 45-59.) In a September 10, 2015 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b) and was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 20-36.) The Appeals Council declined to review the ALJ's decision (TR 1-7), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 15 at 5-16) and the ALJ (TR 22-23, 26-34, 35) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Defendant adopts the ALJ's recitation of the facts. (Docket no. 17 at 5.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual

recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 8, 2013, and that Plaintiff suffered from the following severe impairments: history of malignant neoplasm of the brain, glioma, seizure/pseudoseizures, major depressive disorder, mood disorder, PTSD, opioid dependency, and benzodiazepine dependency. (TR 22.) The ALJ also found that Plaintiff's thyroid conditions, degenerative disc disease, and left medial malleolar fracture were non-severe impairments. (TR 22-23.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 23-25.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) where the claimant can lift and/or carry 20 pounds occasionally, and 10 pounds frequently, can sit up to six hours of an eight-hour workday, and can stand and/or walk up to six hours of an eight-hour workday. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can occasionally bend, twist, or turn at the waist or neck. The claimant is limited to simple unskilled work involving one, two, and three step instructions. The claimant must avoid jobs involving concentration on detailed or precision tasks, or multitasking. The claimant is limited to jobs that do not require teamwork, or working in close physical proximity of coworkers. The claimant is limited to work with minimal contact and directions from a supervisor, and work with only brief and superficial contact with the public. The claimant must be able to work at a flexible pace with no production quotas mandating a specific number of pieces per hour or an up-line or down-line coworker depending upon the claimant's productivity.

(TR 25-34.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national

3

economy. (TR 35-36.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since April 8, 2013, the date the application was filed. (TR 20, 36.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which

the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in

response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ "fail[ed] to consider the objective medical evidence and Plaintiff's subjective complaints in his Step Two analysis; (2) the ALJ failed to create an accurate Residual Functional Capacity Assessment and therefore erroneously found work at Step Five; (3) the ALJ erred in evaluating the medical source opinion of Dr. Adam Hart; and (4) the ALJ made an erroneous credibility determination." (Docket no. 15 at 17-18, 19-26.)

### 1. The ALJ's Assessment of Plaintiff's Degenerative Disc Disease

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by finding that her degenerative disc disease was a non-severe impairment and at step five of the

sequential evaluation process by failing to incorporate the limitations caused by her degenerative disc disease into her RFC. (Docket no. 15 at 19-22.) A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). But the step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at step two of the sequential evaluation process, the ALJ determined that Plaintiff had the following the severe impairments: history of malignant neoplasm of the brain, glioma, seizure/pseudoseizures, major depressive disorder, mood disorder, PTSD, opioid dependency, and benzodiazepine dependency. (TR 22.) The ALJ then determined that Plaintiff's thyroid conditions, degenerative disc disease, and left medial

malleolar fracture were not severe impairments. (TR 22-23.) Specifically, with regard to Plaintiff's degenerative disc disease, the ALJ said:

> The claimant alleged that she had arthritis and disc disease. An x-ray of the lumbar spine revealed mild to moderate degenerative changes in the lumbar spine, and lumbar vertebral body heights were within normal limits (Ex. 32F/23). Due to the fact that this condition causes no more than minimal limitations in the claimant's ability to perform basic work-related activities, the undersigned has determined that the degenerative disk [sic] disease is a non-severe impairment for the purposes of this decision.

(TR 22.) The ALJ, however, did not discuss Plaintiff's degenerative disc disease at any of the remaining steps of the sequential evaluation process. Accordingly, the ALJ's failure to categorize Plaintiff's degenerative disc disease as a severe impairment is not harmless under *McGlothin* and *Maziarz*, and the ALJ's consideration of Plaintiff's degenerative disc disease, or lack thereof, must be further evaluated for reversible error.

Plaintiff argues that the ALJ should have included additional limitations in Plaintiff's RFC based on her degenerative disc disease. To support this argument, Plaintiff points out that an x-ray of her lumbar spine revealed moderate to advanced degenerative changes at the lumbrosacral junction and that a contemporaneous physical examination documented tenderness and decreased range of motion in her lumbar spine. (Docket no. 15 at 19 (citing TR 770-71, 781-82).) She also refers to her hearing testimony in which she stated that she left her last job because she missed one to two days per week due to her pain and degenerative disc disease, among other things. (*Id*. (citing TR 55).) She also references a letter that she sent to the ALJ after the hearing in which she informed that she suffered from burning back pain after bending and walking and that she lies flat on her back in between periods of sitting or standing. (*Id*. (citing TR 317).) Plaintiff further notes that in her function report, she stated that stiffness in her lower back affects her ability to lift, bend, stand, and walk. (Docket no. 18 at 2-3 (citing TR

266).) Plaintiff asserts that her degenerative disc disease, when considered in conjunction with her other impairments, does not support an RFC for light work because she cannot stand for extended periods as a result of the disease. (Docket no. 15 at 20.) Plaintiff claims that there is ample evidence to support standing and walking limitations, which were not included in the RFC. (*Id*. at 22.) She also points out that the RFC does not include a need to miss work. (*Id*.)

Defendant argues that the objective and subjective evidence cited by Plaintiff is insufficient to demonstrate that her degenerative disc disease is severe or that it affected her ability to perform work-related activities. (Docket no. 17 at 8-13.) Notably, Defendant points out that Plaintiff does not cite to any treatment for her back pain or degenerative disc disease or to any medical opinion regarding its severity.

Indeed, it is a bit perplexing that Plaintiff's extensive medical record does not contain any treatment records or medical opinions regarding an impairment that Plaintiff claims to be disabling. Nevertheless, it is not the function of the court to weigh or resolve conflicts in the evidence. *See Brainard, supra*. Regardless of whether Plaintiff's degenerative disc disease is a severe or non-severe impairment, it was the duty of the ALJ to consider it at all steps of the sequential evaluation process. Here, in formulating Plaintiff's RFC, the ALJ did note Plaintiff's hearing testimony that she could not work because of her pain. (TR 26.) And he did find that Plaintiff had the physical RFC to perform only light work with occasional bending, twisting, or turning at the waist or neck. (TR 25.) But whether or not the ALJ found that Plaintiff's RFC was so limited due to her degenerative disc disease is unknown because the ALJ failed to discuss Plaintiff's degenerative disc disease at all in his assessment of Plaintiff's RFC. The ALJ's failure to conduct such a discussion of Plaintiff's degenerative disc disease is erroneous under *McGlothin*, and it has inhibited the court's ability to perform a meaningful review of this matter.

For these reasons, Plaintiff's Motion for Summary Judgment should be granted in this regard, and this case should be remanded for proper consideration of Plaintiff's degenerative disc disease.

### 2. The ALJ's Assessment of Dr. Adam Hart, M.D.'s Medical Opinion

Plaintiff argues that the ALJ did not comply with the procedural aspect of the treating physician rule in assessing Dr. Hart's opinion and that the ALJ's rejection of Dr. Hart's opinion is not supported by substantial evidence. (Docket no. 15 at 22-25.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the

Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ summarized and assessed Dr. Hart's opinion as follows:

In May 2015, Dr. Adam Hart, M.D. completed a Medical Source Statement (Ex. 36F). Dr. Hart opined that the claimant had a marked impairment in her ability to make judgments on complex work-related decisions (Ex. 36F/2). Dr. Hart cited a mental status examination from December 2014, which noted that the claimant had a depressed and anxious mood, but an unremarkable [sic] thought content, with her attention and concentration within normal limits. Her insight and judgment were fair. Dr. Hart noted that the claimant was independent in almost all of her activities of daily living, and that she could communicate well with her family and friends (Ex. 36F/4). At that time, the claimant's concentration and task completion were impaired due to anxiety symptoms that included

> ruminations about her son's suicide. Dr. Hart opined that the claimant had a poor ability to adapt to work-related stresses given the severity and duration of her anxiety symptoms. Dr. Hart diagnosed the claimant with post-traumatic stress disorder, major depressive disorder, opiate use disorder, Cluster B traits with a rule out diagnosis of Borderline Personality Disorder. Dr. Hart opined that the claimant could possibly improve with a trauma based treatment including prolonged exposure and Dialectical Behavior Therapy (DBT), but she had yet to fully participate in that treatment.
>
> In the Medical Source Statement, Dr. Hart opined that the claimant had a "marked" impairment in her ability to make judgments on complex work-related decisions, but only had a "moderate" impairment in her ability to understand, remember, and carry out short and simple instructions, and in her ability to make judgments on simple work-related decisions (Ex. 36F/5.) According to Dr. Hart, the claimant would have "marked" limitations in maintaining attendance and punctuality during a workday and workweek, performing at a consistent pace without more than regular breaks, and responding appropriately to changes in routine work setting. She had only moderate limitations in sustaining an ordinary routine without special supervision, and interacting with coworkers, supervisors, and the public. The undersigned grants these opinions only little evidentiary weight; they are based upon Dr. Hart's personal clinical interviews with the claimant; however, he had only seen her four times (see notes in 31F) before completing the Medical Source Statement. His four clinical interviews with the claimant do not compose a substantial longitudinal treatment record; therefore, his opinions will be granted only little evidentiary weight.

(TR 32-33.)

Plaintiff argues that the ALJ's explanation for assigning "little weight" to Dr. Hart's opinion belies logic because the ALJ assigned "some weight" to the opinion of the state-agency psychological consultant, who did not even examine Plaintiff. (Docket no. 15 at 24.) She argues that it therefore does not constitute a "good reason" under the Social Security regulations. (*Id.*) Defendant counters that the minimal nature of Dr. Hart's treatment with Plaintiff is a good reason for discounting Dr. Hart's opinion and that the ALJ's decision to accord greater weight to the state-agency consultant's opinion than Dr. Hart's opinion is not, by itself, reversible error. (Docket no. 17 at 20.) Defendant also argues that the ALJ's failure to articulate good reasons for discounting Dr. Hart's opinion does not require reversal because the ALJ's discussion of Dr.

12

Hart's opinion shows that the ALJ implicitly found that Dr. Hart's opinion was not well supported and not consistent with the other record evidence. (*Id*. at 18, 19-20, 21 (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)).)

A plain reading of the ALJ's discussion and assessment of Dr. Hart's opinion, however, even when read in conjunction with the ALJ's assessment of the other record opinions regarding Plaintiff's mental health, does not demonstrate an implicit finding of non-supportability and inconsistency as Defendant suggests. The ALJ's discussion is merely a recitation of Dr. Hart's opinion; it contains no analysis, and furthermore, it contains no analytical or comparative words or phrasing from which the reader can infer which parts of Dr. Hart's opinion the ALJ found to be inconsistent with or unsupported by the evidence. Defendant's post-hoc rationalization of the ALJ's assessment (*see* docket no. 17 at 21) does not cure the ALJ's lack of analysis.

Indeed, the length and frequency of Plaintiff's treatment with Dr. Hart was an appropriate factor for the ALJ to consider in assessing Dr. Hart's opinion. *See* 20 C.F.R. § 416.927(c). And as Defendant points out, it is not necessarily erroneous for an ALJ to give more weight to a non-treating physician's opinion than a treating physician's opinion. *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) ("An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records."). But here, the ALJ's sole reason for discounting Dr. Hart's opinion – that Dr. Hart's four clinical interviews with Plaintiff do not compose a substantial longitudinal treatment record – is illogical where the ALJ accorded greater weight to the opinion of the non-examining state-agency psychological consultant, and it is therefore not a "good reason" within the meaning of the regulations. Without further explanation or analysis of the supportability of Dr. Hart's opinion or its inconsistency with the record evidence, the ALJ's

13

assessment of Dr. Hart's opinion is confusing, and it does not permit either the reviewer or Plaintiff to understand the disposition of the case. Therefore, the ALJ's failure to provide good reasons for discounting Dr. Hart's opinion is not harmless error, and remand of this matter for proper consideration of Dr. Hart's opinion is warranted.

### 3. The ALJ's Assessment of Plaintiff's Credibility

Because Plaintiff's credibility assessment will potentially change upon remand, and in the interest of judicial economy, Plaintiff's claim of error in this regard will not be considered at this juncture.

## VI. CONCLUSION

For the reasons stated herein, the court should **GRANT IN PART** Plaintiff's Motion for Summary Judgment (docket no. 15), **DENY** Defendant's Motion for Summary Judgment (docket no. 17), and remand this matter for proper consideration of Plaintiff's degenerative disc disease and for proper consideration of Dr. Hart's opinion in accordance with the treating physician rule.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 16, 2018            s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 16, 2018            s/ Leanne Hosking
                                   Case Manager